# HENRY C. BROWN *v.* HENRY W. KINNEY, SUPERINTENDENT OF PUBLIC INSTRUCTION OF THE TERRITORY OF HAWAII, ET AL.

## No. 1042.

ERROR TO CIRCUIT JUDGE, FIFTH CIRCUIT.
HON. L. A. DICKEY, JUDGE.

ARGUED NOVEMBER 30 AND DECEMBER 3, 1917.    DECIDED DECEMBER 17, 1917.

ROBERTSON, C.J., QUARLES AND COKE, JJ.

APPEAL AND ERROR—*mandamus—satisfaction of judgment..*
    Under the statute relating to writs of error, the judgment in a mandamus case is not regarded as fully satisfied where a peremptory writ, though served, has not been complied with.
SAME—*same—plaintiff in error in contempt of court.*

Opinion of the Court.

In this Territory the judgment of a circuit judge in a mandamus case may be reviewed by the supreme court either upon an appeal or a writ of error. The right of the respondent to a writ of error is not lost because of the fact that he may be in contempt of court for not having obeyed the mandate of a peremptory writ.

SCHOOLS—*status of teacher—contract.*

Where one who has been appointed a school teacher by the department of public instruction enters into a contract with the Territory to serve as such teacher for a specified time, the department is under no legal obligation to reappoint him at the expiration of the contract, or to assign a reason for not reappointing him, or to give him a hearing in connection with its decision not to reappoint him.

OPINION OF THE COURT BY ROBERTSON, C.J.

This case has come before this court upon a writ of error issued to the circuit judge of the fifth circuit to review a decision and order granting a peremptory writ of mandamus directed to the department of public instruction of the Territory of Hawaii and the several commissioners of the department requiring it and them to forthwith reinstate the petitioner, Henry C. Brown, now the defendant in error, as principal of the public school at Waimea, county of Kauai.

The defendant in error filed a motion that the writ be dismissed on the ground that execution had been fully satisfied prior to the issuance of the writ. Upon the motion the contention was made that as the peremptory writ of mandamus had been served on the respondents the order of the circuit judge should be regarded as having been fully satisfied notwithstanding that the petitioner had not been in fact restored to his position as principal of the school. And the alternative contention was made that if the latter fact showed that the order of court had not been satisfied then the plaintiffs in error were in contempt of court and the writ of error should be dismissed

on that account. The motion was overruled. The statute (R. L. 1915, Sec. 2518) provides that a writ of error may be had at any time before execution is fully satisfied within six months from the rendition of judgment, and that (Sec. 2525) in civil cases the writ issues as of right. It was not shown that the plaintiffs in error had been adjudged to be in contempt for failing to obey the mandate, or that any attempt had been made to have them so adjudged. Upon a showing that they had applied, or intended in good faith to apply, for a writ of error the circuit judge might have granted a stay, or without granting a stay, might have declined to consider them as being contumacious. The reinstatement of the petitioner would have, of course, fully satisfied the mandate and defeated the right to a writ of error. But we do not feel at liberty to read into the statute a provision to the effect that one who is possibly in contempt of court may not have a writ of error. The issuance of the writ operated as a stay from the time of notice therof. R. L. 1915, Sec. 2533. At common law a writ of error lies to review a final judgment in a mandamus proceeding. 3 Bl. Com. 265; *Kenny* v. *Hudspeth,* 59 N. J. L. 504, 529. In *Hartman* v. *Greenhow,* 102 U. S. 672, 675, it was said, "The judgment (in mandamus), therefore, in the case, stands like the judgment in an ordinary action at law, subject to review under similar conditions." In this Territory such a judgment may be reviewed by this court either upon an appeal or a writ of error.

The material facts involved in the consideration of the case upon its merits are as follows: Mr. Brown, the petitioner, had been principal of the public school at Waimea, Kauai, for about five years, when he entered into a contract in the form used by the department of public instruction in the following terms,

Opinion of the Court.

## "REGULAR CONTRACT.

"This Agreement, made this....day of June 1915, by and between the Territory of Hawaii, by H. W. Kinney, its Superintendent of Public Instruction, hereinafter called the party of the first part, and Henry C. Brown, hereinafter called the party of the second part:

### "Witnesseth:

"The party of the first part hereby agrees to employ the party of the second part as a teacher in the public schools of the Territory of Hawaii for the school year ending the 31st day of August, 1916, at a yearly salary of $1,800.00, payable in monthly installments as provided by the Rules and Regulations of the Department of Public Instruction, and in consideration therefor the said party of the second part hereby agrees to accept the terms of said employment and faithfully perform all the duties required of him/her by the Rules and Regulations of the Department of Public Instruction.

"And it is hereby stipulated and agreed by and between the said parties that the Rules and Regulations of the Department of Public Instruction of the Territory of Hawaii are hereby incorporated in and made a part of this contract and more particularly the chapter of said Rules and Regulations, which reads as follows:

### "Dismissal and Transfer of Teachers.

"(1) A teacher may be dismissed from the service for cause, after a hearing of the case before the department or authorized agent of the department. The following may be considered as sufficient cause for dismissal:

"(a) Immoral conduct.
"(b) Insubordination.
"(c) Inefficiency.
"(d) Conviction of a penal offense.
"(e) Incurable disease.

"A teacher may also be dismissed from the department whenever, after a hearing, it shall ap-

pear to the department, that such dismissal will be for the benefit of the department.

"Dismissal for any of cause (a), (c), (d) will include cancellation of certificate.

"(2) A teacher may be transferred from one school to another at the discretion of the Department of Public Instruction.

"(3) Salaries may be withheld until reports, health certificates and inventories are received by the department.

"(4) A teacher may be reduced in salary for failure to carry out the provisions of the course of study, if his work is unsatisfactory, or for violation of the rules and regulations of the department.

"And it is further stipulated and agreed by and between the parties hereto that if the party of the second part without giving two weeks' notice to the party of the first part voluntarily quits the employment of said party of the first part before the 31st day of August, 1916, said party of the second part shall forfeit all salaries then remaining unpaid and in addition thereto all claim to vacation salary to which he/she might otherwise be entitled.

"In Witness Whereof, the party of the first part has caused these presents to be executed by H. W. Kinney, its Superintendent of Public Instruction, and the party of the second part has hereunto set his/her hand and seal the day and year first above written. ·

"Territory of Hawaii,
"By Henry W. Kinney
"Superintendent of Public Instruction.
"Henry C. Brown."

On or about April 4, 1916, a circular letter was sent to the teachers in public schools, including Mr. Brown, as follows:

"Honolulu, April 4, 1916.

"The Department of Public Instruction desires to have complete data for use at the meeting of the Board of Commissioners next month, when the assignment of teachers for the coming year will be made.

"Will you, therefore, kindly indicate your wishes in that regard in the blank below and return it to this office by April 15th.   Where a change is desired, state briefly your reason.

"You will understand that this is merely a request for information, which is being sent to all teachers in order that the Department may be able to pay attention to their wishes whenever it is found practicable and profitable to do so.   Replies must be made promptly in order to receive attention

"Yours very respectfully,
"Henry W. Kinney
"Superintendent of Public Instruction."

Mr. Brown's reply thereto being as follows:

"Department of Public Instruction.
"Honolulu, T. H.
"Dear Sirs:
"Replying to your inquiry relative to my wishes as to a position in the public schools for the school year 1916-17, I beg to say that I wish:—
"reappointment to the same school.   Waimea, Kauai.
"a transfer to .........................
(Give name of school or location)·
"to resign my position.
"Reason:— .......................................
"Yours very truly,
"(Signed)  Henry C. Brown
"Waimea, Kauai school
"Dated Apr 7—1916.
"P. O. Address during vacation.
"Waimea, Kauai."

It may be noted in passing that while it may be said that the words in the blank form of reply "to resign my position" indicate that the teachers were regarded as having a position of some sort of permanency which they might resign from, it will be observed on the other hand that the form of reply included also a request for "reappointment to the same school," which would imply that

the term of service would expire at the end of the school year.

At a regular meeting of the commissioners held in the month of May, 1916, it was decided not to reappoint Mr. Brown after the expiration of the contract; and this information was communicated to him by the commissioner appointed from the county of Kauai. In August, a hearing having been requested by Mr. Brown, it was accorded by the commissioners, the object of Mr. Brown apparently being to get the commissioners to reconsider their action. On August 19, however, the superintendent of public instruction, pursuant to the decision of the commissioners, notified Mr. Brown that he would not be considered as in the employ of the department on or after September 1, 1916, for the reason that he had not been appointed to any position under the department for the school year beginning on that date.

On January 8, 1917, the circuit judge, sitting at chambers, granted an alternative writ of mandamus in which it was set forth, *inter alia*, that the petitioner is now, and for more than five years next last past has been the principal of the public school known as the Waimea school, at Waimea, county of Kauai, under the laws, rules and regulations of the department of public instruction and is entitled to teach in said school; that there is a good, valid, subsisting and existing contract between said department and the petitioner for the petitioner's services as principal of said Waimea school, or in such other or different capacity as said department may direct in accordance with the law; that the applicant is now, and ever since he has been in the employ of said department has been, at all times, ready, able and willing to perform all and every service which said department, or its authorized agents may direct, and does now offer to do and perform any service which said department may direct; that at

the beginning of the school term the respondents wilfully, deliberately, knowingly, wrongfully and unlawfully failed, refused and neglected, and do now so fail, refuse and neglect to allow the petitioner to teach as principal in said school, or in any other capacity in said school or in any other school in the Territory, but instead have appointed another principal for said Waimea school; and that the superintendent of public instruction had notified the petitioner that he is no longer considered as being in the employ of the department. A demurrer to the alternative writ having been overruled, the respondents filed their return thereto in which they admitted the employment of the petitioner as principal of the Waimea school; admitted their refusal to allow the petitioner to teach in any school of the Territory; but denied that such refusal was wrongful or unlawful; denied the existence of a subsisting contract between the department and the petitioner, and alleged that the contract which had existed between them had expired on August 31, 1916, and that since said date the petitioner has not been employed by the department in any capacity; and alleged that the reason the petitioner had not been reappointed or re-employed was for the "good" or "benefit" of the department, and that the petitioner had been so informed. A hearing was had, but no new facts of importance were developed, and the question presented to the circuit judge was, as it is here, as to the status of school teachers in general, and the petitioner in particular, and the rights of the parties under the laws of this Territory.

We will quote from the decision of the circuit judge on the demurrer in order to show the general view entertained by him of the status of school teachers which led him to his final conclusion in the case, and then point out wherein we disagree with him. The judge said,

"Section 262 Revised Laws 1915, provides that the department may, from time to time, appoint and remove such officers, agents and servants, as may be necessary for carrying out the purposes of this chapter. Section 265 provides that the inspector general may, in the discretion of the department, have the power of appointment and dismissal of school teachers. These statutes, the only ones on the subject until 1915, gave the department full control, but section 258, Revised Laws of 1915, provides that the department may adopt rules and regulations not contrary to existing law * * * for the carrying out of the general scheme of education and for the transaction of its business, which, when approved by the governor, and published, shall have the effect of law. As these rules and regulations are not made by the department alone, they cannot be repealed by the department alone, and are binding on it. They, as I construe them, quite change the status of a teacher. Regulation 17 (6) provides that the department shall give notice to teachers whose work has fallen below standard, that unless their work shows satisfactory improvement before the end of the year, their reappointment may not be recommended. Such notice shall be issued prior to the meeting of the commissioners, at which appointments are made, for the ensuing school year. This is a mischievous and deceitful regulation if it is to be interpreted to mean that only the teacher below standard is to have notice that he is to be superseded by a better one and that the teacher up to standard may be superseded without notice. Yet this is the interpretation that respondents' general argument calls for. I do not so interpret the regulation. I think that by necessary implication it gives the teacher up to standard a right to a reappointment."

Section 262 of the Revised Laws provides that "The department may, from time to time, appoint and remove such officers, agents and servants as may be necessary for carrying out the purposes of this chapter, and regulate their duties, powers and responsibilities, when not otherwise provided by law."

Section 258 provides that "The department may adopt

rules and regulations not contrary to existing law, for the government of all teachers and pupils, and its officers, agents and servants, and for the carrying out of the general scheme of education and for the transaction of its business, which, when approved by the governor and published, shall have the force and effect of law."

Section 1 of Rule 1 provides that "The department shall appoint such teachers, principals and supervisors as may be deemed necessary and consistent with the laws, rules and regulations relating to public schools, such appointment, *if not made for a definite period,* to continue during the pleasure of the department. Regular contracts are issued to duly certificated teachers whose reports during the preceding year show an average of or above the passing mark of 80 per cent. Provisional contracts are issued to teachers who hold no recognized certificate, or whose records during the preceding year have averaged less than 80 per cent."

Rule 9 provides for the dismissal of teachers for cause in terms quoted in the contract *supra*. Section 6 of Rule 17 provides that

"The department shall give notice to teachers, whose work has fallen below standard, that unless their work shows satisfactory improvement before the end of the year their reappointment may not be recommended. Such notice shall be issued prior to the meeting of the commissioners at which appointments are made for the ensuing school year."

The rules are to be read in the light of the preexisting practice of the department of public instruction to engage teachers upon yearly contracts. The department undoubtedly has the power to obtain the services of a teacher upon an appointment for a definite and limited period of time. This is expressly recognized by section 1 of Rule 1. The period for which such services may be contracted for is within the discretion of the department acting for the Territory, and beyond the control of any court. It is clear, therefore, that the department had the authority

to appoint Mr. Brown to teach for a year whether he had previously been employed or not, and entirely irrespective of how many such contracts had been made with him from year to year. The contract which is set forth above expressly states the agreement of the Territory "to employ the party of the second part as a teacher in the public schools of the Territory of Hawaii for the school year ending the 31st day of August, 1916." The decision of the department not to reappoint Mr. Brown upon the expiration of his last contract was not, at least not in a legal sense, a dismissal from the service—it was simply a decision that he should not be reemployed. No provision of the statute or rules requires that the department should assign any reason or cause for not reappointing a teacher. The provisions of Rule 9 relating to the dismissal of teachers for cause plainly refers to such dismissal within the period covered by a contract. Section 6 of Rule 17 does not relate to dismissals, nor by any reasonable construction can it be regarded as giving a teacher who is up to standard "a right to a reappointment." The rule is nothing more than a directory provision for a warning to be given to teachers whose work has not been up to the mark that unless they improve "their reappointment may not be recommended."

Attention has been directed to Act 114 of the Session Laws of 1915, entitled "An Act to Establish a Retirement Fund for Pensioning Retired Teachers of the Public Schools," etc., which, as its title implies, provides for the creation of a pension fund to be composed partly of the contributions of "One per cent. per annum of the respective salaries paid to inspectors, principals, teachers and special teachers regularly employed in the public schools," etc.; and that "The department of public instruction shall have power to retire from service any inspector, principal, teacher or special teacher who shall have served in such

capacity or capacities in the schools of this Territory for an aggregate period of twenty-five years," etc. It is contended that those provisions show an understanding on the part of the legislature that school teachers in this Territory are not employed or reemployed upon short-term contracts, but have a much more permanent tenure. This is possibly, but not necessarily, so. Many school teachers, though employed merely from year to year, doubtless remain in the service many years. The department might take into the service teachers under contracts for longer terms than one year. But whether that be done or not the word "retire" in the second of the above quotations is applicable to the retirement, as distinguished from dismissal, of a teacher during the term of an existing contract, whether it be for a long or short term. It is by no means certain that the legislature construed the law with reference to the tenure of school teachers in the way counsel for the defendant in error contends it did. In any event, a legislative construction of a statute can properly be taken into consideration only when the language of the act is open to construction by reason of its uncertainty or ambiguity. Courts "are at liberty to disregard a legislative construction which, in their judgment, is not a correct exposition of the original act." 36 Cyc. 1143. In the case at bar we entertain no doubt as to the meaning of the rules of the department of public instruction. Counsel have referred to the contract as that of the department of public instruction, but, properly speaking, though teachers are appointed by the department, they are employed by the Territory. We hold that the contract of the defendant in error expired on August 31, 1916, and that the department was under no legal duty to reappoint him or to give him a hearing in connection with the decision not to reappoint him. In *Marion* v. *Board of Education*, 97 Cal. 606, 608, the court said, "Under its general

powers, the board of education is authorized to enter into contracts with teachers, and fix their compensation and term of employment. If the board should employ a teacher for one year, it would be absurd to say that it could not dispense with the services of such teacher at the end of the year."

We deem it unnecessary to discuss the point raised by the attorney general as to whether, even if the defendant in error held a valid subsisting contract of employment as alleged, his remedy would be an action for breach of contract, and that mandamus would not lie.

The judgment of the circuit judge is reversed and set aside, and the cause remanded with instructions to discharge the writ.

*I. M. Stainback,* Attorney General, for plaintiffs in error.

*Fred Patterson* for defendant in error.